UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-cr-173-RJC

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | **ORDER** |
| LARRY BOLLINGER, | ) |  |
| Defendant. | ) |  |

Defendant Bollinger ("Defendant" or "Bollinger") filed a Motion to Dismiss on January 11, 2013. (Doc. No. 22). Specifically, Defendant sought to dismiss his indictment on two grounds, first that Congress exceeded its authority under Article I, Section 8 of the Constitution ("Foreign Commerce Clause") in criminalizing non-commercial illicit sexual contact after traveling in foreign commerce; and second, that the extraterritorial application of 18 U.S.C. § 2423(c) violated the Due Process Clause of the Fifth Amendment. In an earlier order, issued prior to trial, the Court denied Defendant's Motion to Dismiss. This order sets out the bases for that ruling.

I.  **BACKGROUND**

On May 15, 2012, Defendant, who resided in Gastonia, North Carolina, was indicted on two counts of traveling to Haiti and engaging in illicit sexual conduct with a minor. (Doc. No. 1: Indictment). The indictment did not allege that Defendant engaged in sexual activity as part of a commercial transaction, or that Defendant traveled to Haiti with the intent of engaging in illicit sexual conduct. (Id.). Both incidents are alleged to have occurred between August 1, 2009 and November 18, 2009. (Id.). On January 11, 2013, Defendant filed the instant Motion to Dismiss.

1

(Doc. No. 22). On January 15, 2013, the Government filed its response. (Doc. No. 23). On January 17, 2013, the Court entered an order denying the motion with the statement that a written order would follow.

## II. STANDARD OF REVIEW

A statute's constitutionality presents a question of law. United States v. Bostic, 168 F.3d 718, 721 (4th Cir. 1999). In ruling on such a motion, the Court cannot decide contested issues of fact but is limited to the allegations contained in the indictment. Stirone v. United States, 361 U.S. 212 (1960). Once duly enacted, federal statutes obtain a "presumption of constitutionality." United States v. Morrison, 529 U.S. 598, 607 (2000) ("Due respect for the decisions of a coordinate branch of Government demands that [courts] invalidate a congressional statute only upon a plain showing that Congress has exceeded its constitutional bounds."). Accordingly, the party attacking a statute has the burden of demonstrating that the government action is unconstitutional. A facial challenge is the "most difficult challenge to mount successfully." United States v. Salerno, 481 U.S. 739, 745 (1987).

## III. DISCUSSION

### A. The Foreign Commerce Clause

Article I, section 8 of the Constitution grants Congress the power "to regulate Commerce with foreign nations." US CONST. art I, §8, cl. 3. The Foreign Commerce Clause has been recognized primarily as a tool to limit the ability of individual states to intervene in matters affecting international trade. Japan Line, Ltd. v. County of Los Angeles, 441 U.S. 434 (1979). The extension of the clause to regulate private activity in foreign countries is a recent phenomenon and one that has not been litigated extensively. United States v. Clark, 435 F.3d 1100, 1102 (9th Cir. 2006) ("Cases involving the reach of the Foreign Commerce Clause vis-à-

vis congressional authority to regulate our citizens abroad are few and far between."). Indeed, only one appellate court, the Third Circuit, has found illicit sexual acts without a commercial nexus to be subject to regulation under the Foreign Commerce Clause. United States v. Pendleton, 658 F.3d 299, 301 (2011) (finding 18 U.S.C. § 2423(c) valid under the Foreign Commerce Clause).[1] This finding, however, has been questioned by some judges who, like Defendant, regard the regulation of non-commercial activities of private citizens in foreign lands to exceed the bounds of the Foreign Commerce Clause.[2] Here, given the paucity of legal precedent on the issue and the existence of a sounder basis for finding §2423(c) constitutional under the Necessary and Proper Clause, the Court declines to jump into the breach to determine the specific reach of Congress under the Foreign Commerce Clause. Where an alternative reading of a statute is plausible, a Court fulfills its duty to avoid an unconstitutional reading of an ambiguous statute. INS v. St. Cyr, 539 U.S. 289, 299-300 (2001).

---

[1] In Clark, the Ninth Circuit expressly limited its holding "to §2423(c)'s regulation of *commercial* sex acts." 435 F.3d 1100, 1110. (emphasis added).

[2] Judge Ferguson authored a vigorous dissent in Clark, noting that:
> The Constitution authorizes Congress [t]o regulate Commerce with foreign Nations. Art. I, §8, cl. 3. The activity regulated by 18 U.S.C. § 2423(c), illicit sexual conduct, does not in any sense relate to commerce with *foreign nations*. Rather, § 2423(c) is a criminal statute that punishes private conduct fundamentally divorced from foreign commerce. Article I, section 8, clause 3, while giving Congress broad authority over our commercial relations with other nations, is not a grant of international police power.

435 F.3d at 1117 (emphasis in original).

In a dissent to the unpublished Third Circuit opinion in United States v. Bianchi, Judge Roth posited that:
> Although … Congress's foreign commerce power is broad, see Japan Line, Ltd. v. County of Los Angeles, 441 U.S. 434, 448, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979), it has never been deemed unlimited. Congress may regulate activities that are *commercial* in nature or substantially affect foreign *commerce*. See, e.g., United States v. Morrison, 529 U.S. 598, 611, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000) (holding that in all cases where federal regulation of local activity has been upheld, it was because "the activity in question has been some sort of economic endeavor"). However, Title 18 U.S.C. § 2423(c), as defined in section(f)(1), reaches crimes that do not in any sense constitute "Commerce with foreign Nations." US Const. art I, § 8, cl. 3. I submit that section 2423(c) has a breadth of application that offends our Constitution. For that reason, it should be struck down.

386 Fed. Appx. 156, 163 (3rd Cir. 2010) (unpublished) (emphasis in original).

3

B.      The Necessary and Proper Clause

A treaty is "primarily a contract between independent nations." Medellin v. Texas, 552 U.S. 491, 504 (quoting Head Money Cases, 112 U.S. 580, 598 (1884)). Article II, Section 2, of the Constitution expressly grants to the executive branch the power to make treaties "by and with the Advice and Consent of the Senate." US CONST. art II. § 2. cl. 2.

The Necessary and Proper Clause, in turn, empowers Congress to enact those laws that 'carr[y] into Execution' powers specifically conferred on Congress by the Constitution. United States v. Comstock, 560 U.S. 126, 130 S. Ct. 1949, 1969 (2010) (Alito, J. concurring) (citing Art. I, § 8, cl. 18.).[3] Under the Necessary and Proper Clause, Congress has the power to enact legislation to implement a treaty. See US CONST. art. I, §8, cl.18.  If a "treaty is valid there can be no dispute about the validity of the [implementing] statute under Article I, [§] 8, as a necessary and proper means to execute the powers of the government." Missouri v Holland, 252 U.S. 416, 432 (1920).  Treaties made pursuant to the President's Article II power can authorize Congress to deal with 'matters' that might otherwise exceed its authority.  United States v. Lara, 541 U.S. 193, 200 (2004).

The relevant issue for this Court is whether 18 U.S.C. § 2423(c) properly implements obligations assumed under a valid treaty of the United States.  To so determine, the Court must first examine whether a treaty exists on the subject on which Congress seeks to legislate.

1.      The Optional Protocol

On July 5, 2000, President Clinton signed the Optional Protocol to the United Nations Convention on the Rights of the Child on the Sale of Children, Child Prostitution, and Child

---

[3] "The Necessary and Proper Clause provides the constitutional authority for most federal criminal statutes.  In other words, most federal criminal statutes rest upon a congressional judgment that, in order to execute one or more of the powers conferred on Congress, it is necessary and proper to criminalize certain conduct, and in order to do that it is obviously necessary and proper to provide for the operation of a federal criminal justice system and a federal prison system." Comstock, 130 S. Ct. at 1969 (Alito, J. concurring).

Pornography ("Optional Protocol"). S. Treaty Doc. No. 106-37, 2171 U.N.T.S. 227. The Senate ratified the Optional Protocol on December 23, 2002, and it entered into force the following month. Haiti signed the Optional Protocol on August 15, 2002.

The Optional Protocol appears to be non-self-executing insofar as it requires legislation on the part of individual nations to give effect to its provisions. See Foster v. Neilson, 27 U.S. 253 (1829) (distinguishing a self-executing treaty which obtains the force of law by its ratification from a non-self-executing treaty which, even after ratification, requires an act of Congress to implement its provisions). The Preamble to the Optional Protocol demonstrates clearly that the purpose of the agreement is to encourage individual states to enact and enforce criminal statutes to combat child sexual exploitation by its citizens in foreign countries. Article Three to the Preamble provides that each party to the agreement shall cover fully under its criminal or penal laws the "[o]ffering, delivering, or accepting, by whatever means, [of] a child for the purpose of . . . [s]exual exploitation of the child." Preamble to Optional Protocol, Article 3(1)(i)(a). Such acts are to be "fully covered under its criminal or penal law, whether these offenses are committed domestically or transnationally or on an individual or organized basis." Id. Additionally, "each State party, shall take measures … to establish the liability of legal persons for offenses established in paragraph 1…." Id. 3(4). In signing the Optional Protocol, the United States signaled its intent to enact and enforce legislation preventing the sexual exploitation of children by its citizens in foreign countries.

  2. The Protect Act and Its Precursors

On April 30, 2003, having passed both houses of Congress, President Bush signed 18 U.S.C. § 2423(c), under the title of "the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 (Protect Act)."

18 U.S.C. § 2423(c) provides that:

Any United States citizen or alien admitted for permanent residence who travels in foreign commerce or resides, either temporarily or permanently in a foreign country, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

§ 2423(f) defines "illicit sexual conduct" as:

(1) a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States; or
(2) any commercial sex act (as defined in section 1591) with a person under 18 years of age.

The Protect Act was not the first time that Congress had contemplated legislation designed to combat sexual assaults by its citizens in an international arena. In 2002, a year prior to the passage of the Optional Protocol and Protect Act, Congress drafted the Sex Tourism Prohibition Improvement Act of 2002 ("2002 Act") to address some of the difficulties faced by prosecutors due to the international nature of sex crimes. H.R. 4477, 107th Cong. (2nd Sess. 2002). In citing the need for such legislation, the House noted that the "ineffective law enforcement, lack of resources, corruption, and generally immature legal systems" of many countries serve as barriers to effective prosecution. H.R. REP. NO. 107-525 at 3, 2002 WL 1376220, *5 (June 24, 2002). Noting the need for domestic enforcement of child sex crimes by its citizens outside of the United States, Congress sought to "eliminate[] the intent requirement" mandating that the Government prove that the defendant traveled to a foreign country with the intent to engage in sex with a minor. Id. At the time of the drafting, Congress cited to the Foreign Commerce Clause as the authority of the enactment. Notably, the legislative history was drafted prior to the ratification of the Optional Protocol by the Senate.

One year later, the 2002 Act was incorporated verbatim into the Protect Act; however the legislative history for the latter does not contain any reference to a constitutional authority,

6

including the Foreign Commerce Clause. Significantly, the ratification of the Optional Protocol falls between the drafting of the 2002 Act and the Protect Act. Prior to the ratification of the Optional Protocol, the criminalization of illicit sexual conduct in foreign countries was tied directly to the Foreign Commerce Clause as the United States was not party to an agreement in which it expressed its intent to enact measures extending criminal liability for illicit sexual conduct by its citizens in foreign countries. Once the Optional Protocol was ratified by the Senate and became effective, Congress possessed an alternative source of constitutional power to enact such legislation. While the absence of a citation to constitutional authority cannot be read as direct authority signifying an intent on the part of Congress to base its authority to draft §2423(c) under the Necessary and Proper Clause, it certainly permits the inference that Congress sought not to limit its authority for the legislation solely to the Foreign Commerce Clause. Likewise, the failure to cite the Necessary and Proper Clause as the source of constitutional authority is immaterial to the question of whether such clause empowers Congress to pass § 2423(c). This Court is aware of no law requiring Congress to cite all available sources of Constitutional authority in each piece of legislation. Here, such authority obtained once Congress ratified the treaty.

3. Standard of Review Under Necessary and Proper Clause

Having ascertained the existence of a valid treaty, the relevant issue is whether 18 U.S.C. § 2423(c) serves as a valid implementation of the provisions of the Optional Protocol. In determining whether the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute, courts assess whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power. See Sabri v. United States, 541 U.S. 600, 605 (2004) (referring to "review for means-end rationality" under

7

the Necessary and Proper Clause).  This inquiry contains two aspects: first, courts must ascertain whether the legislation derives from a power enumerated in the Constitution.  The focus of this inquiry is on the Constitution to determine where it grants Congress such authority.  See, e.g., Morrison, 529 U.S. at 607 (holding that every law enacted by Congress must be based on one or more constitutionally enumerated power).  Second, courts determine whether the statute "constitutes a means that is rationally related to the implementation of a constitutionally enumerated power." Comstock, 130 S. Ct. at 1956 (citing Sabri, 541 U.S. at 605).  Interpreting McCulloch v. Maryland, 4 Wheat. 316 (1819), the Supreme Court has used the term "means-ends rationality" to describe the test, requiring a proper fit between the "means" (the federal law) and the "ends" (the enumerated powers) it is designed to serve.  See, e.g., Comstock, 130 S. Ct at 1956-57, 1971 (Thomas, J. dissenting); Sabri, 541 U.S. at 605.  Simply stated, the relevant inquiry is "whether the means chosen are 'reasonably adapted' to the attainment of a legitimate end…." Comstock, 130 S. Ct. at 1957 (citation omitted).

     The existence of a valid treaty (the Optional Protocol) satisfies the first inquiry in serving as the applicable source empowering Congress to draft §2423(c).  Congress has the power to pass such legislation as is necessary and proper to implement a non-self-executing treaty.  See Holland, 252 U.S. at 432.  The balance of the inquiry therefore falls on whether 18 U.S.C. § 2423(c) is rationally related to the stated purpose of the Optional Protocol.  This Court finds that this is clearly so. Section 2423(c) bears a rational relationship to the Optional Protocol which explicitly exhorts signatories to criminalize sexual exploitation of children by its citizens in foreign countries, especially countries whose justice systems lack sufficient resources to prosecute such crimes.  The distinction between commercial and non-commercial sexual activity, significant in the question of foreign commerce, is merely incidental to the Optional Protocol.

The stated purpose of the Optional Protocol is to combat the sexual exploitation of children by adults; the form of such exploitation – commercial or otherwise – is incidental to the harm the agreement seeks to prevent. Accordingly, the removal from §2423(c) of those limiting aspects – that a defendant engage in commercial sexual acts or travel with the specific intent to engage in such conduct – is perfectly consistent with a treaty directing states to increase their ability to enact and enforce criminal statutes against its citizens for the sexual exploitation of children in foreign lands. Section 2423(c) represents a rational means to achieve the obligations assumed upon the ratification of the Optional Protocol. "Enacting a statute that essentially mirrors the terms of an underlying treaty is plainly a means which 'reasonably enacted to the attainment of a legitimate end' – ensuring that the United States complies with our international obligations under a valid treaty." United States v. Bond, 681 F.3d 149, 167 (3rd Cir. 2012) (Rendell, J. concurring) (quoting Comstock, 560 U.S. 126, 130 S. Ct. 1949, 1957).

In such light, the Court finds 18 U.S.C. § 2423(c) to be clearly within the scope of Congress' authority under the Necessary and Proper Clause and **DENIES** Defendant's Motion to Dismiss.

    C.    <u>Extraterritorial Application of § 2423(c)</u>

Defendant moved to dismiss the indictment on the ground that a prosecution for conduct that occurs entirely within a foreign country violates the Due Process Clause of the Fifth Amendment. (Doc. No. 22). The general principle is that legislation, including criminal statutes, applies only within the territorial jurisdiction of the United States. Equal Opportunity Comm'n v. Arabian Am. Oil Co., 499 U.S. 244, 248 (quoting Foley Bros. v. Filardo, 336 U.S. 281, 285 (1949)). This presumption can be overcome where Congress expresses an affirmative intention to extend the law to cover conduct outside of the United States. Reyes-Gaona v. North Carolina

9

Growers Assoc. Inc., 250 F.3d 861, 864 (4th Cir. 2001) (citation omitted). By its own terms, 18 U.S.C. § 2423(c) states explicitly that it applies to conduct of American citizens committed outside of the United States. Having established a clear intent by Congress, the Court turns to whether the application of the statute in this instance squares with the Due Process Clause.

The Due Process Clause establishes that the application of domestic legislation to extra-territorial conduct must be neither "arbitrary" nor "fundamentally unfair." United States v. Yousef, 327 F.3d 56, 111 (2d Cir. 2003). Here, the Court finds the application of § 2423(c) to square with the Due Process Clause as it is neither arbitrary nor unfair. Defendant is a citizen of the United States who retained legal residence in North Carolina during all relevant periods. In Clark, the Ninth Circuit found the status of defendant as citizen of the United States to be sufficient to satisfy the Due Process requirements. 435 U.S. at 1108. "The longstanding principle that citizenship alone is sufficient to satisfy Due Process concerns still has force." Id. (citing Blackmer v. United States, 284 U.S. 421 (1932)). More importantly, the application of §2423(c) to Defendant does not suggest arbitrary or unfair application. Section 2423(c) was drafted for the specific purpose of combating sexual exploitation perpetrated by U.S. citizens in foreign countries. The allegations against Defendant fall squarely into the behavior Congress sought to regulate. There is no evidence that the government has singled out defendant or directed its actions in a manner inconsistent with the purposes of the statute. Accordingly, there is no Due Process violation.

## IV.    CONCLUSION

For the reasons discussed, the Court **DENIES** Defendant Bollinger's Motion to Dismiss (Doc. No. 22), finds §2423(c) to be a valid exercise of Congressional power under the Necessary

and Proper Clause of the Constitution, and finds that there is no violation of Defendant's rights to Due Process under the Fifth Amendment.

Signed: August 19, 2013

Robert J. Conrad, Jr.
United States District Judge